IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION



EOD
01/19/2007

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **THOMAS GENE MOODY, SR.,** | § | |
| xxx-xx-0944 | § | Case No. 06-20073 |
| **and EVA ONETTA MOODY** | § | |
| xxx-xx-6361 | § | |
| 280 Jenny Lane, Jefferson, TX 75657 | § | |
| | § | |
| Debtors | § | Chapter 13 |

## MEMORANDUM OF DECISION[1]

This Court has heard and considered the confirmation of the Chapter 13 Plan ("Plan") filed by Debtors Thomas Moody and Eva Moody ("Debtors") and the objection to such confirmation filed by 21st Mortgage Corporation (the "Claimant") in the above-referenced case. The Claimant objected to confirmation based upon the alleged failure of the Debtors to propose a plan which would provide value to the Claimant which is not less than its allowed secured claim as required by §1325(a)(5)(B)(ii) of the Bankruptcy Code. Upon conclusion of the hearing, the Court took the matter under advisement. This memorandum of decision disposes of all issues pending before the Court.[2]

---

[1] This Memorandum of Decision is not designated for publication and shall not be considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the case or as to other evidentiary doctrines applicable to the specific parties in this proceeding.

[2] This Court has jurisdiction to consider confirmation of the plan pursuant to 28 U.S.C. §1334(b) and 28 U.S.C. §157(a). The Court has the authority to enter a final order in this contested matter since it constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(A), (L), and (O).

**Background**

The Debtors became indebted to the Claimant pursuant to a promissory note originally executed to a predecessor-in-interest of the Claimant by the Debtors, on September 25, 2000.[3] The indebtedness is secured by a purchase-money security interest in a 2000 Fleetwood Anniversary 28x66 mobile home (the "Collateral"), the lien upon which is actually held by the Claimant's principal.[4] In part to address an arrearage which had arisen under the Debtors' contract with the Claimant, the Debtors, on June 16, 2006, filed a petition for relief under Chapter 13 of the Bankruptcy Code. In conjunction with the filing of the petition, the Debtors also filed their Chapter 13 Plan and listed the replacement value of the Collateral at $20,000.00. The Claimant thereafter filed its proof of claim on June 22, 2006, in the secured amount of $38,473.30. The sole issue presented to the Court relates to whether the Debtors' plan tenders sufficient value to satisfy the Claimant's secured claim based upon the value of the Collateral .

In one sense, the answer is a simple "no" since the Debtors, as the owners of the Collateral, proffered at the confirmation hearing a collateral value of $31,416.00 — an amount significantly higher than that reflected in the Debtors' plan transmitted to creditors. Such a modification is more than a *de minimus* change in the plan proposal and

---

[3] Claimant's Exhibit 1.

[4] Claimant is actually the agent for Chase Manhattan Mortgage Corporation, but has full power to act as a creditor in this proceeding under the "Continuing Irrevocable Power of Attorney" admitted as Claimant's Exhibit 2, and the proof of claim is filed under the name of the Claimant.

mandates a denial of the Debtors' plan as circulated. However, in the furtherance of judicial economy, the Court agreed to the parties' request to determine the dispute over the value of the Collateral in order to facilitate the confirmation process. In order to engage in a closer examination of the opposing appraisal documents, the Court took the matter under advisement at the conclusion of the hearing.

**Discussion**

In support of its collateral valuation, the Claimant offered the appraisal testimony of Mr. Steve Bauer who valued the Collateral at $45,346.00. Mr. Bauer testified that he has conducted approximately fifteen (15) mobile home appraisals in the past year and that, as to mobile home appraisals, he works exclusively for the Claimant in the role of an independent contractor. He conducted an inspection of the Collateral and prepared a written appraisal report based loosely upon a National Appraisal System format — a valuation format developed by National Appraisal Guides, Inc. — which is also the publisher of the N.A.D.A. MANUFACTURED HOUSING APPRAISAL GUIDE (hereafter referenced as the "NADA Guide"). As opposed to the "bluebook"-type values offered in the NADA Guide, the NAS format seeks to offer a foundation from which an appraiser can make a more particularized valuation of a mobile home based upon an actual physical inspection of the unit. The format presents a "base structure value" for a particular mobile home unit, which is then adjusted by location and by condition to reach a

condition-adjusted value. It then upwardly adjusts the condition-adjusted value for particular components of, and accessories to, the unit.[5]

Based upon his inspection of the mobile home unit, Mr. Bauer testified that the Collateral is clean and still presents a nice appearance, and the unit itself is sound. He acknowledged that the Collateral needed repair work in certain areas, including the roof, flooring and kitchen, and he estimated the cost of making the needed repairs at approximately $2,885.00.

While his asset valuation was presented in the format of an NAS report, Mr. Bauer utilized the NAS method in a very selective manner by electing to implement only certain components of the NAS analysis, while omitting other components which might very well have lowered the value of the asset. He thereby forfeited to a substantial degree the reliability otherwise engendered by the use of the NAS method. There were no "community" adjustments made nor was any adjustment made for comparable sales. Nor did Mr. Bauer provide credible evidence to support his contention that the Collateral only depreciated in value by approximately $7,000.00 over a span of six years (from the new unit price of approximately $52,000.00 to his current valuation of approximately $45,000.00. Based upon his calculation of the various component values which he elected to use, Mr. Bauer appraised the mobile home unit at $45,346.00.

---

[5] This appraisal system has been previously criticized for failing to explain why standard metal roofing and standard aluminum siding commonly utilized in mobile homes are assessed as value-enhancing components, and not as basic components contemplated by the substantial "base structure value" given for a unit.

On the other hand, the Debtors urged the Court to adopt a revised collateral value of $31,416.00 for their mobile home based upon the appraisal testimony of Rusty Asaff, a local Marshall appraiser. Mr. Asaff testified on behalf of the Debtors based upon his experience as a real estate broker in the local area in which he is primarily employed by banks and real estate investors, with some degree of experience appraising mobile homes.

Mr. Asaff also inspected the Collateral and corroborated in greater detail that the Collateral suffers from minor exterior problems, including roof defects, and interior problems which include drooping ceilings and floors, which are likely due to a blocked drain associated with the heating unit. He also highlighted certain problems with a rippling of metal on one side of the Collateral, and a separation of the ceiling in one of the bedrooms.

In determining a value for the Collateral, Mr. Asaff did not use the NADA Guide in any form. He also downplayed the location of the Collateral due to its mobility. In fact, Mr. Asaff did not really attempt to value the Debtors' particular mobile home unit based upon manufacturer or model, but rather calculated his valuation by assessing comparable sales of real estate upon which mobile homes have been located, and thereafter making adjustments based on comparable age and size of the mobile home units involved. Using the product of those considerations as a base, Mr. Asaff then made an upward adjustment in value in the amount of $17.00 per square foot. Though he ostensibly utilized that adjustment due to the relatively young age of the Collateral, that

significant adjustment was poorly quantified and was never adequately explained. As reflected in Mr. Asaff's calculations, the Debtors assert that the depreciated condition of the Collateral was not adequately taken into account by the Claimant's appraisal and thus justifies the establishment of the lower replacement value of $31,416.00 for the Collateral.[6]

It has been long recognized that "[v]aluation outside the actual market place is inherently inexact." *Rushton v. Comm'r*, 498 F.2d 88, 95 (5th Cir. 1974). *See also Boyle v. Wells (In re Gustav Schaefer Co.)*, 103 F.2d 237, 242 (6th Cir.), *cert. denied*, 308 U.S. 579, 60 S.Ct. 96, 84 L.Ed. 485 (1939) ["The valuation of property is an inexact science and whatever method is used will only be an approximation and variance of opinion by two individuals does not establish a mistake in either."]. Because the valuation process often involves the analysis of conflicting appraisal testimony, a court must necessarily assign weight to the opinion testimony received based on its view of the qualifications and credibility of the parties' expert witnesses. *In re Coates*, 180 B.R. 110, 112 (Bankr. D.S.C. 1995) ["The valuation process is not an exact science and the court must allocate varying degrees of weight depending upon the court's opinion of the credibility of . . . [the

---

[6] The valuation of collateral in this context seeks to determine its "replacement value." *Assoc. Commercial Corp. v. Rash*, 520 U.S. 953, 956, 117 S.Ct. 1879, 1882, 138 L.Ed.2d 148 (1997). While *Rash* might warrant further reductions in any projected retail price due to the fact that such price may reflect value of items, such as transportation and installation costs, which the Debtors in this instance are obviously not receiving, *see id.* at 1886, n.6., no additional evidence was brought to the Court to quantify a further downward adjustment and, thus, none will be imposed.

appraisal] evidence."].[7] A bankruptcy court is not bound to accept the values in the parties' appraisals; rather, it may form its own opinion of the value of the subject property after considering all of the evidence presented. *In re Holcomb Health Care Svcs., L.L.C.*, 329 B.R. 622, 669 (Bankr. M.D. Tenn. 2004).

In weighing the evidence presented with the foregoing principles in mind, the Court finds the Claimant's evidence to be more compelling. The condition of the Collateral is still basically sound. The Court has considered the estimated cost of the needed repairs, and the relevant factors omitted by Mr. Bauer which would have lowered the appraised value under the NAS analysis. However, most of these required value reductions can be subsumed into the Claimant's voluntary reduction of its valuation amount to that equivalent to its outstanding loan balance of $38,727.00 which it announced at the conclusion of the hearing.

Therefore, upon consideration of all of the evidence presented and for the reasons expressed herein, the Court finds the value of the Collateral to be $37,000.00. Accordingly, the Court concludes that the Claimant's objection to the confirmation of the Debtors' proposed Chapter 13 plan must be sustained and that confirmation of the Debtors' Chapter 13 plan must be denied. In light of this initial denial of confirmation,

---

[7] In weighing conflicting appraisal testimony, courts generally evaluate a number of factors, including the appraiser's education, training, experience, familiarity with the subject of the appraisal, manner of conducting the appraisal, testimony on direct examination, testimony on cross-examination, and overall ability to substantiate the basis for the valuation presented. *In re Smith*, 267 B.R. 568, 572-73 (Bankr. S.D. Ohio 2001).

the Debtors shall file a new Chapter 13 plan within thirty (30) days of the date of this Order and, in the event that the Debtors fail to do so, absent a further order of the Court extending such deadline for cause shown, or in the event that the Debtors thereafter fail to confirm such new Chapter 13 plan upon consideration by this Court under its normal procedures, this Chapter 13 case shall be dismissed, pursuant to §349(a) of the Bankruptcy Code, without further notice or hearing and with prejudice to the rights of the Debtors to file a subsequent petition under any chapter of Title 11, United States Code, for a period of one hundred twenty (120) days from the entry of the order of dismissal.

This memorandum of decision constitutes the Court's findings of fact and conclusions of law[8] pursuant to Fed. R. Civ. P. 52, as incorporated into contested matters in bankruptcy cases by Fed. R. Bankr. P. 7052 and 9014. A separate order will be entered which is consistent with this opinion.

Signed on 01/19/2007

/s/ Bill Parker

THE HONORABLE BILL PARKER
CHIEF UNITED STATES BANKRUPTCY JUDGE

---

[8] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.